IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CR-377-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| DERRICK TERRELL JONES, | ) | |
| | ) | |
| Defendant. | ) | |

This case came before the court October 24, 2011, upon remand by the United States Court of Appeals for the Fourth Circuit, for resentencing. The court renders this memorandum opinion in amplification upon its pronouncement that statutory penalties memorialized by the Fair Sentencing Act ("FSA"), Pub. L. 111-220, 124 Stat. 2372, do not apply where the offense of conviction occurred prior to enactment of the FSA.

## BACKGROUND

The judgment of the district court was affirmed in part and vacated in part in judgment entered by the Fourth Circuit September 15, 2011, which remanded the case to the undersigned for further proceedings in accordance with its decision. Hearing was noticed September 26, 2011, for October 26, 2011,[1] before a magistrate judge, on defendant's motion for bond pending resentencing. That motion was filed a day before the court's mandate issued September 22, 2011.

---

[1] Certain delay in hearing was necessary in order to effectuate defendant's custodial transfer to this district.

Thereafter, the court dispensed with proceeding before the magistrate judge and the matter was returned to the undersigned's docket, to provide for a more efficient address. On October 24, 2011, the case came for hearing at which defendant and the government readily agreed that the proper course was to proceed directly with resentencing. As such, the motion for bond pending resentencing was denied as moot.

While the court had considered and dismissed at sentencing January 21, 2011, defendant's argument as to retroactive application of the FSA, in light of the revised position of the United States Attorney General and the circuit split which has developed, the Fourth Circuit enunciated in opinion filed in the case September 15, 2011, that "it [is] appropriate, without indicating any view as to the outcome, to accord the district court an opportunity to consider the matter anew." United States v. Jones, No. 11-4120, slip op. at 2 n.* (4th Cir. Sept. 15, 2011). In this posture the court took up the matter again.

Defendant was charged in indictment returned December 17, 2009. Count one charged defendant with felon in possession of a firearm, and count two charged him with knowingly possessing more than five grams of cocaine base in violation of 21 U.S.C. § 844(a). The offense conduct at issue occurred April 13, 2008, over two years before the FSA was passed. Pursuant to the plea agreement, conditionally approved by the magistrate judge on behalf of the court May 4, 2010, the government agreed to dismiss count one at time of sentencing.

Sentencing, originally scheduled for August 16, 2010, was requested by defendant to be continued. After hearing arguments on that motion, the court continued sentencing, and directed from the bench that if defendant determined some variance in order, motion could be filed on a prescribed schedule which allowed response to be made by the government together with any revised

2

pre-sentence report ("PSR"), all prior to the new sentencing date, January 21, 2011.

Defendant argued in memorandum filed December 3, 2010, and at sentencing hearing in January, for retroactive application of the FSA. The government vigorously responded in opposition to retroactive application in filing lodged on the docket December 23, 2010.[2] The government voiced strongly its opposition to retroactive application of the FSA also at sentencing hearing.

Prior to enactment of the FSA, the probation office had determined that defendant's range pursuant to the United States Sentencing Guidelines ("Guidelines") was ninety-two (92) to one hundred and fifteen (115) months. This range was driven by defendant's extensive criminal history, placing defendant in criminal history category VI, and offense level 23. However, pursuant to the FSA, the United States Sentencing Commission ("Sentencing Commission") promulgated emergency Guidelines after production of the initial report in accordance with the new statutory mandatory minimums of the FSA, to go into effect by November 1, 2010. Therefore, the advice of the Guidelines was very different at time of sentencing in January 21, 2011.

Specifically, defendant's new offense level dropped dramatically to six. With a criminal history category VI, the Guidelines range was trumped, however, by the statutory minimum and therefore revised to sixty (60) months, based on that mandatory minimum sentence of five years prescribed under 21 U.S.C. § 844. Evidencing its agreement with the position espoused then by the government, that the FSA was not retroactive, the court sentenced defendant to a term of imprisonment of fifty-one (51) months on count two, with three years supervised release, and other terms and conditions as set forth more particularly in the judgment from which appeal was taken.

---

[2] The government's response numbered more than one hundred pages and included a panoply of case law from various circuits holding the FSA is not retroactive in cases where the offense conduct, as here, occurred before August 3, 2010 (the date the FSA was passed).

3

The government tempered its position with careful regard for the factors of § 3553, particularly noting defendant's extensive history of criminal conduct. The court recognized the discretion it had, and upon consideration of the Guidelines specifically and generally, and in accordance with the statutory sentencing factors required to be considered, it was determined that defendant should serve a term of imprisonment of fifty-one (51) months. Defendant timely appealed.

On September 15, 2011, the Fourth Circuit affirmed the conviction but vacated the sentence. In unpublished, per curiam opinion, the Fourth Circuit specifically noted that it indicated no view as to whether the FSA applies retroactively to defendants sentenced after August 3, 2010, and that it left this determination to the district court.

## COURT'S DISCUSSION

At hearing Monday, argument on behalf of defendant was made by his attorney, Assistant Federal Public Defender Devon Donahue. On this date, defense counsel was particularly vehement in her argument that the FSA should apply retroactively. Counsel for the government, Assistant United States Attorney Jane Jackson, standing in the place of Assistant United States Attorney Banu Rangarajan, submitted that it is now the position of her office that the FSA is retroactive for defendants sentenced after August 3, 2010, and for this reason, a twelve (12) month sentence is appropriate.

Having heard the arguments of the parties, upon careful consideration of the FSA and the case law, the court adopts the position of the Second, Fifth, Seventh, and Eighth Circuits, that the FSA is not retroactive to defendants sentenced after August 3, 2010, for reasons set forth more

4

particularly below.[3] See United States v. Acoff, 634 F.3d 200 (2d Cir. 2011) (per curiam) (FSA not retroactive for defendants sentenced after August 3, 2010); United States v. Tickles, __ F.3d __, 2011 WL 4953988 (5th Cir. 2011) (same); United States v. Fisher, 635 F.3d 336 (7th Cir. 2011) (same); United States v. Sidney, 648 F.3d 904 (8th Cir. 2011) (same).[4]

The court's analysis is focused primarily on the general Federal Savings Statute ("Savings Statute"), 1 U.S.C. § 109. The Savings Statute provides,

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

§ 109. Thus, absent any express statement that a statute is retroactive, the Savings Statute requires courts to apply the penalties in place at the time the crime was committed. Sidney, 648 F.3d at 906 (citing United States v. Brewer, 624 F.3d 900, 909 n.7 (8th Cir. 2010)).

Absent from the FSA is an "express" indication from Congress that the FSA is to apply retroactively. See, e.g., Fisher, 635 F.3d at 340. "Congress could easily have included a single sentence in the FSA to give it retroactive effect, but for whatever reason, it did not do so." Sidney,

---

[3] At hearing, the undersigned stated that she adopted the position of the Seventh and Eighth Circuits as she was then unaware that the Second and Fifth Circuits have reached the same decision. The court's continued research after hearing, where the issue herein presented reveals itself in at least one other case just returned to the district, shows that the Second and Fifth Circuits also have held that the FSA is not retroactive for defendants sentenced after August 3, 2010. These holdings buttress the court's decision.

[4] At least three circuit courts of appeals have reached the opposite conclusion. See United States v. Douglas, 644 F.3d 39 (1st Cir. 2011) (finding the FSA is retroactive for defendants sentenced after August 3, 2010); United States v. Dixon, 648 F.3d 195 (3d Cir. 2011) (same); United States v. Rojas, 645 F.3d 1234 (11th Cir. 2011), rehearing en banc granted, opinion vacated by United States v. Rojas, __ F.3d __, 2011 4552364 (11th Cir. 2011) (same).

5

648 F.3d at 908. The Fourth Circuit has noted that Congress "knows how to explicitly provide for retroactive application when it so desires." United States v. Bullard, 645 F.3d 237, 248 (4th Cir. 2011) (citing Velasquez-Gabriel v. Crocetti, 263 F.3d 102, 106-07 (4th Cir. 2001)). While Bullard is factually distinguishable from this case because it involved a defendant sentenced prior to August 3, 2010, the Fourth Circuit's consideration of the Savings Statute in Bullard in the context of the FSA guides the court's analysis here. Congress did not explicitly provide in the text of the FSA that it was to be applied retroactively. As such, this court finds that retroactive application of the FSA to any defendant whose offense conduct occurred before August 3, 2010, including those who were sentenced afterwards, would be manifest error. See Acoff, 634 F.3d at 201.

The circuits that have found the FSA to be retroactive for defendants sentenced after August 3, 2010, have skirted the Savings Statute with the argument that the "express" language requirement of § 109 does not require an explicit reference to § 109 or a special retroactivity provision. See United States v. Douglas, 644 F.3d 39, 43 (1st Cir. 2011). Thus, the Savings Statute may be overridden either by express declaration or "necessary implication." Id. (citing Great N. Ry. Co. v. United States, 208 U.S. 452, 465 (1908)); see also Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 659 n.10 (1974). Additionally, courts cite Marcello v. Bonds, 349 U.S. 302, 310 (1955) for the proposition that no "magical passwords" are required for retroactive application of a statute that can be said by fair implication to supersede § 109. See Douglas, 644 F.3d at 43.

The First, Third, and Eleventh Circuits have used the "necessary implication" argument to suggest that the purpose and language of the FSA expressly conflict with the application of the harsher statutory mandatory minimums in effect before the FSA was passed. Specifically, these courts have found that Congress' desire to decrease what it considered to be the unfair and unduly

6

harsh 100:1 ratio, manifest through the legislative history of the FSA as well as the text of the statute itself, is evidence of a necessary implication that the old statutory mandatory minimums should not be applied to defendants whose offense conduct occurred pre-August 3, 2010, but who were sentenced after that date. Specifically, these courts found that it would be "logically inconsistent and would achieve absurd results" if the pre-FSA statutory mandatory minimums were applied to those sentenced after August 3, 2010. Rojas, 645 F.3d at 1239.

The Third Circuit pointed to sections eight and ten of the FSA, which sections it contended would make no sense if Congress intended for the old statutory mandatory minimums to be applied to defendants sentenced after August 3, 2010. Dixon, 648 F.3d at 201-02. Section eight directs the Sentencing Commission to adopt emergency Guidelines in line with the new statutory mandatory minimums by November 1, 2010. Id.[5] The Third Circuit reasoned that the mandate in section eight evinces direct evidence of Congress' intent that the new statutory minimums should be applied with the new Guidelines because Congress knew that the amended Guidelines would apply at the date of sentencing, regardless when the offense occurred. Id. Not to apply the new mandatory minimums, it reasoned, would achieve the inconsistent result of having low Guidelines ranges applied retroactively which would be trumped by high mandatory minimums from the old version of the statute.

With regard to section ten of the FSA, that section directs the Sentencing Commission to study the effects of the FSA. The Third Circuit reasoned that if the statute of limitations for drug offenses does not run until August 3, 2015, defendants sentenced in the coming years will still be

---

[5] The Sentencing Commission did amend the Guidelines ranges in response to this directive, adopting lower ranges consistent with the new, lower mandatory minimums under the FSA. The Sentencing Commission included in its amendments that the new Guidelines are retroactive. See Sidney, 648 F.3d at 907.

7

subject to old mandatory minimums. Thus, the Sentencing Commission could not compile an accurate report about the effects of the FSA until it is consistently applied with the new mandatory minimums. Id. at 202.

These arguments do not reveal a "necessary implication" that the FSA should be applied retroactively. As for reliance on legislative history, as the Seventh Circuit observed, a court should be mindful of the "pitfalls of relying on legislative history." Fisher, 635 F.3d at 340. "The FSA is compromise legislation and must be viewed as such." Id. As the Seventh Circuit noted, the disparity between crack and cocaine is the subject of long-standing debate and high-level Congressional awareness. This court is hesitant to read in by implication anything not obvious in the text of the FSA. See Fisher, 635 F.3d at 339. If Congress wanted retroactive application of the FSA, it could have said so. Id.; see also Bullard, 645 F.3d at 248.

As for the Third Circuit's arguments with regard to sections eight and ten of the FSA, the court finds these similarly unconvincing of a necessary implication that § 109 should not be applied. The apparent inconsistency between the new Guidelines and old statutory mandatory minimums is not grounds for inferring Congress' intent to make the FSA retroactive. Statutory mandatory minimums have always trumped the Guidelines, even where the amended Guidelines, absent the mandatory minimum, have otherwise called for a shorter sentence. Kimbrough v. United States, 552 U.S. 85, 107-08 (2007); Sidney, 648 F.3d at 908; United States v. Pierson, 53 F.3d 62, 66 n.3 (4th Cir. 1995).

A disparity between the Guidelines and statutory mandatory minimum in the FSA in no way results in a necessary implication that the statute should be retroactively applied as to bring it more in conformity with the Guidelines. Consistency is not required between the Guidelines and statute

8

because the mandatory minimum controls when it results in a longer sentence than the Guidelines advise. Additionally, to find that a statute includes a necessary implication that the Savings Statute is to be disregarded is a "formidable hurdle." Sidney, 648 F.3d at 908 (citing United States v. Smith, 632 F.3d 1043, 1049 (8th Cir. 2011)); United States v. Blue Sea Line, 553 F.2d 445, 449 (5th Cir. 1977) ("[O]nly the narrowest of spaces is left for argument that the repealer implies that it is applicable to pending cases.").

As for the Third Circuit's analysis regarding section ten of the FSA, the reasoning is speculative at best. The fact that some defendants whose offense conduct occurred before August 3, 2010, will receive sentences under the higher statutory mandatory minimums does not alter the fact that other defendants, whose offenses occurred after August 3, 2010, will be subject to the new mandatory minimums. Nothing prevents the Sentencing Commission from studying the effects of the statute with regard to those cases.

Additionally, while the Third Circuit found that retroactive application was necessary to "restore fairness" consistent with the purpose of the FSA, this court reaches the opposite result. Fairness cannot be achieved if a defendant could obtain a better sentence simply by pushing back the date of sentencing in order to receive the benefit of a favorable change in the law, regardless of when the defendant's offense conduct took place. "It is not irrational for Congress to impose a penalty on those who committed their offenses at a time when they knew or should have known the severity of the applicable penalty, even while reducing the penalty as to future offenders." Acoff, 634 F.3d at 202. In fact, imposing penalties based on the offense conduct promotes necessary clarity to criminal laws, and is consistent with the spirit of the savings statute. An offender can be sure of the statutory penalty for his offense based on the date of the offense and the statute then in force. To hold as the First, Third, and Eleventh Circuits have done would create incentive to continue

9

sentencing until a statute providing a more favorable sentence was passed. Such practice thwarts the purpose of the savings clause, which bars "'application of ameliorative criminal sentencing laws repealing harsher ones in force at the time of the commission of an offense' absent an express statement that the law is intended to be applied retroactively." Bullard, 645 F.3d 237 (citing Warden, Lewisburg Penitentiary, 417 U.S. at 661).

The court finds that the Savings Statute bars retroactive application of the FSA for defendants whose offense conduct occurred prior to August 3, 2010, and who were sentenced after that date. For reasons noted more particularly October 24, 2011, a sentence of fifty-one (51) months is the term of imprisonment which shall be served by this defendant. Counsel's advocacy on behalf of her client included request that where the court may have incorrectly decided the issue, and defendant's liberty is at stake, could not this court see a way to free him now. Several scenarios unsuccessfully were suggested.[6]

Should the Fourth Circuit disagree with the undersigned's conclusions, regarding the retroactivity of the FSA, and remand defendant's case for further resentencing, in light of arguments advanced in succession by defense counsel at hearing, all aimed at securing October 24, 2011, the immediate release of this defendant, in order to respond further, the court considered provisionally what course the case might then take. If the case returns before it, unless directed otherwise by the Fourth Circuit, the court carefully will exercise its responsibilities under Rule 11 of the Federal

---

[6] Among other things, defense counsel suggested that since the parties were in agreement on the retroactivity of the FSA, the court could still sentence defendant to the time defendant has been incarcerated, and while that has amounted to twenty-two (22) months, from this sentence no party would appeal. The government through counsel expressed frustration with effort to cajole its representative into endorsing a sentence of time served which both sides would say in light of their shared position on retroactivity of the FSA is an illegal sentence. Where the court discarded the many cloaks put forward by defendant through his counsel covering his request for immediate release, counsel for defendant suggested that the sentencing hearing was a "charade." Such remark illuminated defendant's position where spirited advocacy seemingly devolved into effort to end run the Fourth Circuit's directives, with disregard, too, for certain Guidelines, rules, and the law.

10

Rules of Criminal Procedure, to determine whether the plea agreement accomplishes the purposes of sentencing in this case. In that light, the court would have before it an agreement that endorses a sentence on a misdemeanor drug charge, which permits defendant to evade responsibility for the companion felon in possession of a firearm charge. As noted below, the offense conduct was particularly egregious. Defendant's history and characteristics reveal him to be a very dangerous individual.[7]

In the exercise of sound judicial discretion, the court would pursuant to Rule 11 of the Federal Rules of Criminal Procedure consider then whether to accept the plea or reject it. See United States v. Midgett, 488 F.3d 288, 297 (4th Cir. 2007) (quoting Santobellow v. New York, 404 U.S. 257, 262 (1971)). The court would be compelled in this case to consider whether or not to accept the plea agreement, consistent with its responsibility under Rule 11, in light of the facts and circumstances then presented. The government communicated in response to the court's inquiry that had the case proceeded on that count, it would have been prepared to prove the essential elements of the offense beyond a reasonable doubt.[8]

---

[7] Defendant has demonstrated propensity to engage in repeat criminal conduct, having failed to benefit from lenient treatment by the state criminal justice system or repeated efforts to conform conduct through supervision. The offense conduct at issue here, pursuant to the PSR, was especially violent. It involved defendant handling an assault rifle and a pistol at the same time, and firing shots at another individual, in close proximity to several children, while intoxicated. Defendant discarded the weaponry and attempted to stuff drugs down his pants, while fleeing law enforcement. Defendant's contacts with the criminal justice system characterize nearly half his life. Defendant, now in his thirties, has been a law breaker since he was a teenager. He has developed no significant work history. He has fathered six children with four women, and defendant in substantial arrears with child support. The altercation which brought him to the attention of law enforcement involved him threatening a family member. He has lived a life demonstrating complete disregard for the law and societal norms, including a pattern of disrespecting law enforcement. Defendant is inclined to resort to violence, and escape with reference to force, as the record shows, and also through use of aliases. He is a chronic substance abuser. For reasons which underlie its decision on sentencing, including with careful consideration of the defendant's background and history, and nature of the offense, the court was compelled at conclusion of hearing also to reject request that this defendant be released pending appeal. The court cannot fashion a set of release conditions that will assure this defendant's appearance and that he will not be a danger to himself or to others.

[8] The court found it appropriate to undertake this inquiry in light of defendant's repeated focus on an end which discounted any consideration of the impact of the plea agreement. If the government discerned weakness in its proof,
(continued...)

It need not undertake this consideration, however, as the court explained Monday, having determined October 24, 2011, that a term of incarceration of fifty-one (51) months, together with the other terms and conditions ordered, accomplishes the purposes of sentencing. The court has imposed in this case a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing. It has no cause at this juncture to reject the plea agreement. Upon careful consideration of the FSA and the case law, the court is compelled to discount the view of the United States Attorney General and the arguments of defendant. For the reasons given, it adheres to the position of the Second, Fifth, Seventh, and Eighth Circuits, that the FSA is not retroactive to a defendant, as here, sentenced after August 3, 2010.

## CONCLUSION

As set forth in more detail on the record, and for the foregoing reasons, the court declines to apply the FSA retroactively. For reasons stated in this opinion and at hearing, a sentence including a term of imprisonment of fifty-one (51) months has been imposed, together with other terms and conditions, which sentence the court finds accomplishes the purposes of sentencing.

SO ORDERED, this the 27th day of October, 2011.

_____
LOUISE W. FLANAGAN
United States District Judge

---

[8](...continued)
the court wanted to know this, as it reasonably could shed a different light on the court's analysis.